**LEVI & KORSINSKY, LLP**
Adam C. McCall (SBN 302130)
Adam M. Apton (SBN 316506)
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel:  (213) 985-7290
Email: amccall@zlk.com
Email: aapton@zlk.com

*Attorneys For Movant Betty Diller*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOESEPH AMANN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>METRO BANK PLC, VERNON W. HILL, II, CRAIG DONALDSON, MIKE BRIERLEY, AND DAVID ARDEN,<br><br>Defendants. | No. 2:19-cv-04739-AB-JC<br><br>**MEMORDANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BETTY DILLER'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**<br><br>Judge: Andre Birotte Jr.<br>Date:  August 30, 2019<br>Time: 10:00 a.m.<br>Courtroom #7B |

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT.................................................................1

II.   STATEMENT OF FACTS..................................................................2

III.  ARGUMENT ..............................................................................6

    A.    MOVANT'S APPOINTMENT AS LEAD PLAINTIFF IS APPROPRIATE................................................................6

      1.  The Procedure Required by the PSLRA ....................................6

        a.  Movant Is Willing to Serve As Class Representative .........................7

        b.  Movant Has the Requisite Financial Interest in the Relief Sought by the Class...............................................................7

      2.  Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure........................................8

        a.  Movant's Claims are Typical of the Claims of all the Class Members ................................................................9

        b.  Movant Will Adequately Represent the Class ....................................10

    B.    APPROVING MOVANT'S CHOICE OF COUNSEL IS APPROPRIATE..............................................................11

IV.   CONCLUSION .........................................................................12

# TABLE OF AUHTORITIES

**Cases**

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002)................................................................1, 8, 9

*Crawford v. Honig*,
  37 F.3d 485 (9th Cir. 1994)....................................................................10

*In re Drexel Burnham Lambert Group*,
  960 F.2d 285 (2d Cir. 1992)....................................................................10

*Ferrari v. Gisch*,
  225 F.R.D. 599 (C.D. Cal. 2004) ...............................................................9

*Francisco v. Abengoa, S.A.*,
  No. 15 CIV. 6279 (ER), 2016 WL 3004664 (S.D.N.Y. May 24, 2016)..........12

*Gen. Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982) ..............................................................................10

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)...................................................................9

*Haung v. Acterna Corp.*,
  220 F.R.D. 255 (D. Md. 2004)..................................................................9

*Inchen Huang v. Depomed, Inc.*,
  289 F. Supp. 3d 1050 (N.D. Cal. 2017) ....................................................12

*Isaacs v. Musk,*
  No. 18-CV-04865-EMC, 2018 WL 6182753 (N.D. Cal. Nov. 27, 2018) ........11

*Levin v. Res. Capital Corp.*,
  No. 15 CIV. 7081 (LLS), 2015 WL 7769291 (S.D.N.Y. Nov. 24, 2015) ........12

*Maiden v. Merge Techs., Inc.*,
  No. 06-cv-349, 2006 U.S. Dist. LEXIS 85635 (E.D. Wis. Nov. 21, 2006)........8

*In re Milestone Sci. Sec. Litig.*,
  183 F.R.D. 404 (D.N.J. 1998) ...................................................................9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) .................................................................9

*Pope v. Navient Corp.*,
  No. CV 17-8373 (RBK/AMD), 2018 WL 672640 (D.N.J. Feb. 2, 2018) ........12

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)......................................................................9

*Takeda v. Turbodyne Techs., Inc.*,
  67 F. Supp. 2d. 1129 (C.D. Cal. 1999) .......................................................9

*In re Tesla, Inc. Sec. Litig.*,
    No. 18-CV-04865-EMC, 2018 WL 6609569 (N.D. Cal. Dec. 17, 2018).........11

*Weiss v. York Hosp.*,
    745 F.2d 786 (3d Cir. 1984)...............................................................................10

**Statutes**

15 U.S.C. § 78u-(a)(3)(A)(i)(II) .................................................................................6

15 U.S.C. § 78u-(a)(3)(B)(i)........................................................................................6

15 U.S.C. § 78u-4(3)(B)(iii)(I) ..................................................................................11

15 U.S.C. § 78u-4(a) ....................................................................................................6

15 U.S.C. § 78u-4(a)(3)(B) ................................................................................passim

15 U.S.C. § 78u-4(a)(3)(B)(iii) ...................................................................................7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ..............................................................................7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ......................................................................11

15 U.S.C. § 78u-4(e) ....................................................................................................8

**Rules**

Fed. R. Civ. P. 23 ...............................................................................................passim

## I.   PRELIMINARY STATEMENT

Presently pending before the Court is the above-captioned securities class action (the "Action")[1] brought on behalf of all persons who purchased or otherwise acquired the securities of Metro Bank PLC ("Metro Bank" or the "Company") between March 6, 2018 and May 1, 2019, inclusive ("Class Period"). Plaintiffs in the Action allege violations of the Securities Exchange Act of 1934 (the "Exchange Act") against the Company, Vernon W. Hill, II ("Hill"), Craig Donaldson ("Donaldson"), Mike Brierley ("Brierley"), and David Arden ("Arden") (collectively, "Defendants").[2]

Movant Betty Diller ("Movant") lost approximately $264,854.70 as a result of the alleged fraud during the Class Period. Movant respectfully submits this memorandum of law in support of her motion for (a) appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995, as amended (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); and (b) for approval of her selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel.

The PSLRA provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation and has made a *prima facie* showing that it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. *See generally In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002). Movant satisfies both requirements.

Movant believes that she has the largest financial interest in the outcome of the case.[3] As such, Movant meets the requirements of the PSLRA for  appointment as Lead Plaintiff. Moreover, Movant satisifies the requirements of Rule 23 of the

---

[1] The first filed action against Defendants is entitled *Amann v. Metro Bank PLC et al.,* Case No. 2:19-cv-04739 (C.D. Cal. May 30, 2019) (the "*Amann* Action").

[2] The Action alleges violations under Sections 10(b) and 20(a) of the Exchange Act, as well as Rule 10b-5 promulgated thereunder.

[3] Movant's certification identifying her transactions during the Class Period and a chart identifying her losses are attached to the Declaration of Adam C. McCall, dated July 29, 2019 ("McCall Decl."), as Exhibits A, and B, respectively.

Federal Rules of Civil Procedure in that her claims are typical of the claims of the Class, and she will fairly and adequately represent the interests of the Class.[4]

Accordingly, Movant respectfully submits that she should be appointed Lead Plaintiff. Additionally, Movant's selection of Levi & Korsinsky as Lead Counsel for movant and the proposed class should be approved by this Court.

## II.     STATEMENT OF FACTS

Metro Bank, along with its subsidiaries, purportedly provides retail and commercial banking services in the United Kingdom. ¶ 7.[5] The Company's securities trade Over-The-Counter ("OTC") under the symbol "MBNKF." *Id.*

Throughout the Class Period, Defendants made materially false and misleading statements regarding Metro Bank's business, operational and financial results. ¶ 25. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Metro Bank misclassified the risk terms of many of its loans; (2) accordingly, Metro Bank failed to maintain sufficient capital; (3) this conduct would lead to investigations by the PRA and FCA; (4) this conduct would also lead to the reduction of deposits at Metro Bank from larger commercial and partnership clients; and (5) as a result, Defendants' public statements were materially false and/or misleading at all relevant times. *Id.*

On March 6, 2018, the beginning of the Class Period, Metro Bank published its Annual Report and Accounts 2017 (the "2017 Annual Report"), which included a Chairman's Statement by Defendant Hill, a Chief Executive Officer's Statement by Defendant Donaldson, and a Corporate Governance Overview by Defendant

---

[4] The Action excludes from the Class the Defendants, officer and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

[5] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "Complaint") filed in the *Amann* Action. Unless otherwise defined, capitalized terms shall have the same meaning set forth in the Complaint. The facts set forth in the Complaint are incorporated herein by reference.

Brierley. ¶ 20. Within this report, Metro Bank included a description of the Company's risk management policies, stating that:

> "Our risk management policies and controls are reviewed regularly to reflect changes in market conditions, regulations, and our activities. Through regular training and additional standards, guidance and procedures, we aim to develop a robust and effective control environment in which all our colleagues understand their roles and obligations."

*Id*.

The 2017 Annual Report also reported the Company's capital structure, including its Risk Weighted Assets ("RWAs") and also notes to the financial statements included a section on capital management and regulation. ¶¶ 21, 22. In the Capital Management section, Metro Bank specifically stated that "We manage capital in accordance with prudential rules issued by the PRA and FCA, in line with the EU Capital Requirements Directive." ¶ 22.

The truth about Metro Bank's classification of loan risks began to be revealed on January 23, 2019 when Metro Bank disclosed that it misclassified the risk of hundreds of millions of pounds of loans. ¶ 26. Metro Bank issued a press release "Metro Bank Announces FY 2018 Results Preview And Trading Update", stating that "Risk weighted assets at full year are expected to be approximately £8.9bn with the increase driven by both net loan growth and an adjustment in the risk weighting of certain commercial loans secured on property and certain specialist BTL loans to large portfolio landlords." *Id*.

On that same day, multiple media outlets reported this disclosure in further detail. ¶ 27. *The Guardian* published an article, "Metro Bank shares crash after loans blunder revealed," revealing that "The bank, which has been opening new branches as established rivals cut back, revealed that hundreds of millions of pounds of commercial property loans and loans to commercial buy-to-let operators had been wrongly classified in risk terms, and should have been among its 'risk-

weighted assets' (RWAs)." *Id.* Another article, "Metro Bank Plunges on Misclassified Assets, Capital Concerns," published by Bloomberg, also repoeted the misclassifaciton of the risk terms of many of Metro Bank's loans. ¶ 28.

As the news reached the Market, Metro Bank's shares fell nearly 35%, or $10.00 per share, to close on January 23, 2019 at $18.80 per share. ¶ 29.

Then, a few days later on January 31, 2019, the *Financial Times* published the article, "Metro Bank bosses under fire over accounting error" which stated that the realization of the accounting errors was not based on Metro Bank's own self reporting, as they previously framed it, but rather in response to the PRA's concerns with Metro Bank's loans. ¶ 30. Specifically, the article reported that "the bank admitted the potential problems had been pointed out by regulators at the Bank of England," and that the PRA "informed Metro of suspected issues in some parts of its loan book, prompting a wider internal review that discovered the full extent of the mistakes." *Id.*

On this news, shares of Metro Bank fell again, over 10.89%, or $1.70 per share, to close on January 31, 2019 at $14.80 per share. ¶ 31.

On February 27, 2019, another article "Regulators probe Metro Bank's possible false market creation" published by the *Financial Times* revealed that the PRA and FCA initiated investigations into Metro Bank. ¶ 32. In particular, the PRA is focusing on the bank's fundamental accounting error, and  and how it could miscalculate its risk-weighted assets despite using so-called standardised model that is supposed to be relatively simple. *Id.* The FCA is focused on the bank's duties as a listed company to put out accurate statements, according to people familiar with the matter. *Id.* Now, Metro Bank risks separate fines from the PRA and FCA over the incident, and its senior managers could be fined or banned for failings on their watch if wrongdoing is found. *Id.*

On this news, shares of Metro Bank dropped over 22.8%, or $3.92 per share, to close on February 27, 2019 at $13.25 per share. ¶ 33.

On April 23, 2019, Metro Bank published its Annual Report and Accounts 2018 (the "2018 Annual Report"), which include a Chairman's Statement by Defendant Hill, a Chief Executive Officer's Statement by Defendant Donaldson, and a Corporate Governance Overview by Defendant Arden. ¶ 23. Within the 2018 Annual Report, Metro Bank also described the Company's risk management policies, stating that "We've established our risk management policies to identify and analyse the risks we face, to set appropriate risk limits and controls, and to monitor risks and adherence to limits. The Risk team regularly reviews these policies and controls to verify compliance and to reflect changes in market conditions and our activities. We use training and management standards and procedures to develop a robust and effective control environment – one where all colleagues understand their roles and obligations." *Id*.

The 2018 Annual Report also included notes to the financial statements contained a section discussing capital management, again, stating that "We manage capital in accordance with prudential rules issued by the PRA and FCA, in line with the EU Capital Requirements Directive." *Id*.

On May 1, 2019, Metro Bank held a presentation for the first quarter of 2019 results (the "1Q19 Presentation"). ¶ 34. During the 1Q19 Presentation, Defendant Donaldson stated in that " Q1 also reflects the challenges from the broader operating environment, as well as some adverse sentiment which we have seen following our trading update from January", "we have to raise that Q1 saw a 3.6% reduction in our deposits, the result of a small number of commercial and partnership customers reducing deposit balances with us", and that "given the challenge in the first quarter, we expect a more modest rate of deposit growth in 2019 as we catch up what has happened to date." *Id*.

The 1Q19 Presentation also announced that Company's profits were cut in half and a number of large customers ended their relationship with Metro Bank due to the previous misclassification of the loans. ¶ 35. Again, multiple media reports

revealed this disclosure, including an article published by the *Financial Times*, "Big customers desert Metro Bank over accounting error." *Id*.

On this news, shares of Metro Bank fell over 18.6%, or $1.95 per share over the next two trading days to close on May 3, 2019 at $8.50 per share. ¶ 36.

## III.   ARGUMENT

### A.   MOVANT'S APPOINTMENT AS LEAD PLAINTIFF IS APPROPRIATE

#### 1.   The Procedure Required by the PSLRA

Once the Court decides the motion, the PSLRA mandates that the Court decide the lead plaintiff issue "[a]s soon as practicable." 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a) and (a)(3)(B).

The plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA requires the Court to consider within 90 days all motions filed within 60 days after publication of that notice by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. 15 U.S.C. §§ 78u-(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

(aa)   has either filed the complaint or made a motion in response to a notice;

(bb)   in the determination of the  court, has the largest financial interest in the relief sought by the class; and

(cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant satisfies the foregoing criteria and is not aware of any unique defenses that defendants could raise against her. Therefore, Movant is entitled to the presumption that she is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the Action.

### a. Movant Is Willing to Serve As Class Representative

On May 30, 2019, counsel in the *Amann* Action caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A)(i), which announced that a securities class action had been filed against Metro Bank and certain of its officers and directors, and which advised putative class members that they had sixty days from the date of the Notice to file a motion to seek appointment as a lead plaintiff in the Action.[6]

Movant has reviewed the complaint filed in the pending Action and has timely filed her motion pursuant to the Notice.

### b. Movant Has the Requisite Financial Interest in the Relief Sought by the Class

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the movant or movants with the largest financial loss in the relief sought by the action. As demonstrated herein, Movant has the largest known financial interest in the relief sought by the Class. *See* McCall Decl., Ex. B. The movant who "has the largest financial interest in this litigation and meets the adequate and

---

[6] The *Amann* Action was filed in this Court on May 30, 2019. On that same day, the Notice was published over *Business Wire*, a widely-circulated national business-oriented wire service. See McCall Decl. Ex. C.

typicality requirements of Rule 23 . . . is presumptively entitled to lead plaintiff status." *Maiden v. Merge Techs., Inc.*, No. 06-cv-349, 2006 U.S. Dist. LEXIS 85635, at *13 (E.D. Wis. Nov. 21, 2006) (citing *In re Cavanaugh*, 306 F.3d at 732).

Under the PSLRA, damages are calculated based on (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90 day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold her shares, if she sold her shares before the end of the 90 day period. 15 U.S.C. § 78u-4(e).

During the Class Period, Movant purchased Metro Bank shares in reliance upon the materially false and misleading statements issued by defendants, and was injured thereby. Movant suffered a substantial loss of $264,854.70. See McCall Decl. Ex. B. Movant thus has a significant financial interest in the outcome of this case. To the best of her knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23.

### 2. Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification outlined in Fed. R. Civ. P. 23, only two – typicality and adequacy – are recognized as appropriate for consideration at this stage. *See Cavanaugh*, 306 F.3d at 730, n.5, 732. Furthermore, only a "preliminary showing" of typicality and adequacy is required at this stage. *See Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d. 1129, 1136 (C.D. Cal. 1999). Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiffs move for class certification. *See Cavanaugh*, 306 F.3d at 732; *see also Haung v. Acterna Corp.*, 220 F.R.D. 255, 259 (D. Md. 2004); *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 414 (D.N.J. 1998).

As detailed below, Movant satisfies both the typicality and adequacy requirements of Fed. R. Civ. P. 23, thereby justifying her appointment as Lead Plaintiff.

### a. Movant's Claims are Typical of the Claims of all the Class Members

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class." Movant plainly meets the typicality requirement of Rule 23 because: (i) she suffered the same injuries as the absent class members; (ii) she suffered as a result of the same course of conduct by Defendants; and (iii) her claims are based on the same legal issues. *See Ferrari v. Gisch*, 225 F.R.D. 599, 607 (C.D. Cal. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry analyzes whether plaintiff's claims "arise from the same conduct from which the other class members' claims and injuries arise"). Rule 23 does not require that the named plaintiff be identically situated with

all class members. It is enough if their situations share a common issue of law or fact. *See Weiss v. York Hosp.*, 745 F.2d 786, 808-09 (3d Cir. 1984). A finding of commonality frequently supports a finding of typicality. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

In this case, the typicality requirement is met because Movant's claims are identical to, and neither compete nor conflict with the claims of the other Class members. Movant, like the other Class members, acquired Metro Bank securities during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and was damaged thereby. Thus, her claims are typical, if not identical, to those of the other Class members because Movant suffered losses similar to those of other Class members and her losses result from Defendants' common course of wrongful conduct. Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3). *See Weiss*, 745 F.2d at 809; *see also In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).

### b. Movant Will Adequately Represent the Class

Moreover, Movant is an adequate representative for the Class. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. § 78u-4(a)(3)(B); *see Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994) (citation omitted).

Movant's interests are clearly aligned with those of the other Class members. Not only is there no evidence of antagonism between Movant's interests and those of the Class, but Movant has a significant and compelling interest in prosecuting the Action based on the large financial losses she has suffered as a result of the

wrongful conduct alleged in the Action. This motivation, combined with Movant's identical interest with the Class members, demonstrates that Movant will vigorously pursue the interests of the Class. In addition, Movant has retained counsel highly experienced in prosecuting securities class actions, and will submit her choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B) (v). Therefore, Movant will prosecute the Action vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movant has sustained the largest amount of losses from Defendants' alleged wrongdoing, she is, therefore, the presumptive lead plaintiff in accordance with 15 U.S.C. § 78u-4(3)(B)(iii)(I), and should be appointed as such to lead the Action.

## B.   APPROVING MOVANT'S CHOICE OF COUNSEL IS APPROPRIATE

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected and retained Levi & Korsinsky as the proposed Lead Counsel for the Class. The members of Levi & Korsinsky have extensive experience in successfully prosecuting complex securities class actions such as this one, and are well-qualified to represent the Class. *See* McCall Decl. Ex. D (the firm resume of Levi & Korsinsky). *See also Isaacs v. Musk,* No. 18-CV-04865-EMC, 2018 WL 6182753, at *4 (N.D. Cal. Nov. 27, 2018), *reconsideration denied sub nom. In re Tesla, Inc. Sec. Litig.*, No. 18-CV-04865-EMC, 2018 WL 6609569 (N.D. Cal. Dec. 17, 2018) (noting Levi & Korsinsky "is experienced in securities fraud litigation and has been appointed Lead Counsel in other securities class actions."); *Francisco*

*v. Abengoa, S.A.,* No. 15 CIV. 6279 (ER), 2016 WL 3004664, at \*7 (S.D.N.Y. May 24, 2016) (noting that given "Levi & Korsinsky's track record, the Court, like many others in this Circuit before it, concludes that the firm is qualified to serve as lead counsel of the class"); *Levin v. Res. Capital Corp.*, No. 15 CIV. 7081 (LLS), 2015 WL 7769291, at \*2 (S.D.N.Y. Nov. 24, 2015) (appointing Levi Korsinsky as lead counsel and noting that it is "a firm which is well qualified and has successfully served as lead counsel or co-lead counsel in numerous complex securities class actions"); *Pope v. Navient Corp.*, No. CV 17-8373 (RBK/AMD), 2018 WL 672640, at \*5 (D.N.J. Feb. 2, 2018) (appointing Levi & Korsinsky as lead counsel as it "is clearly capable of handling this matter—the firm has extensive experience in private securities litigation and has received numerous favorable judgments in its past representations."); *see also Inchen Huang v. Depomed*, *Inc.*, 289 F. Supp. 3d 1050, 1055 (N.D. Cal. 2017) (appointing Levi Korsinsky as lead counsel).

## IV.    CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court grant her Motion and enter an order: (1) appointing Movant as Lead Plaintiff for the Class in the Action; and (2) approve Levi & Korsinsky as Lead Counsel for the Class.

Dated: July 29, 2019                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**

/s/ *Adam C. McCall*
Adam C. McCall (SBN 302130)
Adam M. Apton (SBN 316506)
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel: (213) 985-7290
Email: amccall@zlk.com
Email: aapton@zlk.com

*Attorneys for Movant Betty Diller*

## CERTIFICATE OF SERVICE

I, Adam C. McCall, hereby declare under penalty of perjury as follows:

I am an associate attorney at Levi & Korsinsky, LLP, with offices at 445 South Figueroa Street, 31st Floor, Los Angeles, CA 90071. I am over the age of eighteen.

On July 29, 2019, I electronically filed the following **MEMORDANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BETTY DILLER'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on July 29, 2019.

 */s/Adam C. McCall*
Adam C. McCall