Adam S. Lurie (admitted *pro hac vice*)
Brenda D. DiLuigi (admitted *pro hac vice*)
Patrick C. Ashby (admitted *pro hac vice*)
**LINKLATERS LLP**
1290 Avenue of the Americas
New York, NY 10104
T: (212) 903-9000
F: (212) 903-9100
adam.lurie@linklaters.com
brenda.diluigi@linklaters.com
patrick.ashby@linklaters.com

Elizabeth A. Sperling (CA State Bar No. 231474)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
T: (213) 576-1000
F: (213) 576-1100
elizabeth.sperling@alston.com

Attorneys for Defendants Metro Bank PLC,
Vernon W. Hill, II, Craig Donaldson,
Mike Brierley, David Arden, and Aileen Gillan

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELO LAVDAS and STELLA LAVDAS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>METRO BANK PLC, VERNON W. HILL, II, CRAIG DONALDSON, MIKE BRIERLEY, DAVID ARDEN, and AILEEN GILLAN<br><br>Defendants. | Case No. 2:19-cv-04739-TJH-JC<br>Assigned to: Hon. Terry J. Hatter, Jr.<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**<br><br>Date: September 3, 2020<br>Time: UNDER SUBMISSION<br>NO APPEARANCES NECESSARY |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................ii

I.    PRELIMINARY STATEMENT .......................................................... 1

II.   ARGUMENT........................................................................................ 2

A.    Specific Jurisdiction Does Not Exist Over Any Of The Defendants.........2

1.    Plaintiffs Fail To Address Or Dispute Fatal Facts Contained In Defendants' Declarations ........................................................... 2

2.    Jurisdictional Discovery Is Not Warranted ................................... 7

B.    Plaintiffs Fail To Allege A "Domestic Transaction".................................. 8

C.    Plaintiffs Fail To State A Claim Under Section 10(b) Of The Exchange Act ....................................................................... 13

1.    Plaintiffs Fail To Demonstrate That Their Purchases Occurred "In Connection With" Defendants' Alleged Misstatements ....................................................................... 13

2.    Plaintiffs Fail To Allege A Material Misstatement Or Omission ....................................................................... 16

3.    Plaintiffs Fail To Raise A Strong Inference Of Scienter.............. 18

a.    Plaintiffs Cannot Rely On The Core Operations Doctrine ....................................................................... 19

b.    The Alleged "Magnitude" Of The Misclassification Issue Does Not Support A Strong Inference Of Scienter ....................................................................... 21

c.    The Other Scienter Allegations Are Insufficient................ 22

d.    Even A Holistic Review Of The Allegations Does Not Raise The Requisite Inference Of Scienter ........................ 23

D.    The Complaint Should Be Dismissed For *Forum Non Conveniens* ........ 24

III.  CONCLUSION .................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
677 F.3d 60 (2d Cir. 2012) ...................................................................... 10

*In re Acadia Pharms. Inc. Sec. Litig.*,
No. 18-CV-01647-AJB-BGS, 2020 WL 2838686 (S.D. Cal. June 1,
2020) ........................................................................................................ 21

*Adams v. Kinder-Morgan, Inc.*,
340 F.3d 1083 (10th Cir. 2003) ............................................................... 22

*Alaska Elec. Pension Fund v. Adecco S.A.*,
371 F. Supp. 2d 1203 (S.D. Cal. 2005) .................................................... 23

*Ambassador Hotel Co. v. Wei-Chuan Inv.*,
189 F.3d 1017 (9th Cir. 1999) ................................................................. 16

*In re Banco Bradesco S.A. Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017) ........................................................ 5

*Banco Safra S.A. - Cayman Islands Branch v. Samarco Mineracao S.A.*,
No. 16 CIV. 8800 (RMB), 2019 WL 2514056 (S.D.N.Y. June 18,
2019) ........................................................................................................ 10

*Barantsevich v. VTB Bank*,
954 F. Supp. 2d 972 (C.D. Cal. 2013) ................................................... 3, 7

*Blair v. CBE Grp. Inc.*,
No. 13-CV-134-MMA WVG, 2013 WL 2029155 (S.D. Cal. May 13,
2013) .......................................................................................................... 8

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ................................................................... 8

*Butcher's Union Local No. 498, United Food & Commercial Workers v.
SDC Inv., Inc.*,
788 F.2d 535 (9th Cir. 1986) ..................................................................... 8

*In re Ceridian Corp. Sec. Litig.*,
542 F.3d 240 (8th Cir. 2008) ................................................................... 24

*Church v. Glencore PLC*,
   No. CV1811477SDWCLW, 2020 WL 4382280 (D.N.J. July 31, 2020)..........24, 25

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
   856 F.3d 605 (9th Cir. 2017) ................................................................. 19, 22, 24

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
   752 F.3d 173 (2d Cir. 2014) .......................................................................... 10

*City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*,
   691 F. App'x 393 (9th Cir. 2017).................................................................. 17

*City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*,
   963 F. Supp. 2d 1092 (E.D. Wash. 2013)................................................. 17, 18

*Das v. Rio Tinto PLC*,
   332 F. Supp. 3d 786 (S.D.N.Y. 2018) ............................................................. 5

*Dietz Int'l Pub. Adjusters of Cal., Inc. v. Evanston Ins. Co.*,
   No. CV 09-06662 MMM (Ex), 2009 WL 10673937 (C.D. Cal. Dec.
   14, 2009) ..................................................................................................... 11

*In re Downey Sec. Litig.*,
   No. CV 08-3261-JFW(RZX), 2009 WL 2767670 (C.D. Cal. Aug. 21,
   2009) ........................................................................................................... 17

*In re Extreme Networks, Inc. Sec. Litig.*,
   No. 15-CV-04883-BLF, 2018 WL 1411129 (N.D. Cal. Mar. 21, 2018) ............... 21

*Ezra Charitable Tr. v. Tyco Int'l, Ltd.*,
   466 F.3d 1 (1st Cir. 2006)............................................................................ 24

*Felber v. Yudof*,
   851 F. Supp. 2d 1182 (N.D. Cal. 2011)......................................................... 12

*In re FVC.COM Sec. Litig.*,
   32 F. App'x 338  (9th Cir. 2002)................................................................... 24

*Gerritsen v. Warner Bros. Entm't Inc.*,
   112 F. Supp. 3d 1011 (C.D. Cal. 2015)........................................................ 9, 11

*Hammer v. Frontier Fin. Corp.*,
   No. C10-0643, 2011 WL 13229260 (W.D. Wash. Sept. 7, 2011) ........................ 18

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003) ............................................................... 8

*In re Hertz Glob. Holdings Inc*,
  905 F.3d 106 (3d Cir. 2018) ................................................................ 22

*Hessefort v. Super Micro Comput., Inc.*,
  No. 18-CV-00838-JST, 2020 WL 1551140 (N.D. Cal. Mar. 23, 2020) ................. 22

*Inchen Huang v. Higgins*,
  No. 17-CV-04830-JST, 2019 WL 1245136 (N.D. Cal. Mar. 18, 2019) ................. 19

*In re Int'l Rectifier Corp. Sec. Litig.*,
  No. CV 07–02544–JFW (VBKx), 2008 WL 4555794 (C.D. Cal. May
  23, 2008) .......................................................................................... 23

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ............................................................................. 7

*J. McIntyre Mach., Ltd. v. Nicastro*,
  564 U.S. 873 (2011) ............................................................................. 7

*Klian v. Crawford*,
  No. CV1202373MMMJEMX, 2012 WL 12878721 (C.D. Cal. June 6,
  2012) ................................................................................................. 3

*In re LDK Solar Sec. Litig.*,
  No. C0705182WHA, 2008 WL 4369987 (N.D. Cal. Sept. 24, 2008) ..................... 5

*Lopes v. Fitbit, Inc.*,
  No. 18-CV-06665-JST, 2020 WL 1465932 (N.D. Cal. Mar. 23, 2020) ................. 21

*Marksman Partners, L.P. v. Chantal Pharms. Corp.*,
  927 F. Supp. 1297 (C.D. Cal. 1996) ....................................................... 22

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ................................................................ 3

*In re McKesson HBOC, Inc. Sec. Litig.*,
  126 F. Supp. 2d 1248 (N.D. Cal. 2000) ..................................................... 23

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010) ............................................................................. 8

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT
Case No. 2:19-cv-04739-TJH-JC

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ........................................................................ 18

*Oklahoma Firefighters Pension & Ret. Sys. v. Ixia*,
No. CV 13-08440 MMM (SHx), 2015 WL 1775221 (C.D. Cal. Apr. 14, 2015) ....................................................................................................... 20

*In re Optimal U.S. Litig.*,
865 F. Supp. 2d 451 (S.D.N.Y. 2012) ........................................................... 14

*Park-Kim v. Daikin Indus., Ltd*,
No. 215CV09523CASKKX, 2016 WL 5958251 (C.D. Cal. Aug. 3, 2016) ............................................................................................................... 4

*Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*,
763 F.3d 198 (2d Cir. 2014) ........................................................................... 13

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) .......................................................................... 7

*In re Petrobras Sec.*,
862 F.3d 250 263 (2d Cir. 2017) ...................................................................... 9

*In re Petrobras Sec. Litig.*,
116 F. Supp. 3d 368 (S.D.N.Y. 2015) ........................................................... 18

*Pinker v. Roche Holdings Ltd.*,
292 F.3d 361 (3d Cir. 2002) ............................................................................. 5

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ........................................................................ 19

*Reese v. Malone*,
747 F.3d 557 (9th Cir. 2014), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017) .......................................................................... 17

*Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Commc'ns Ltd.*,
No. 17-CV-4937 (JPO), 2019 WL 1407453 (S.D.N.Y. Mar. 28, 2019) .................. 5

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
351 F. Supp. 2d 334 (D. Md. 2004) ............................................................ 5, 6

*S.E.C. v. Campania Internacional Financiera S.A.*,
No. 11 Civ. 4904(DLC), 2011 WL 3251813 (S.D.N.Y. July 29, 2011) ................. 14

v

*S.E.C. v. Revelation Capital Mgmt., Ltd.*,
246 F. Supp. 3d 947 (S.D.N.Y. 2017) ..................................................... 14

*S.E.C. v. Sabrdaran*,
No. 14-CV-04825-JSC, 2015 WL 901352 (N.D. Cal. Mar. 2, 2015) ..................... 16

*S.E.C. v. Sharef*,
924 F. Supp. 2d 539 (S.D.N.Y. 2013) ........................................................ 6

*S.E.C. v. Straub*,
921 F. Supp. 2d 244 (S.D.N.Y. 2013) ........................................................ 5

*S.E.C. v. Yin Nan Michael Wang*,
No. LACV1307553JAKSSX, 2015 WL 12656906  (C.D. Cal. Aug. 18, 2015) .................................................................. 10, 11

*In re Satyam Comput. Servs. Ltd. Sec. Litig.*,
915 F. Supp. 2d 450 (S.D.N.Y. 2013) ........................................................ 7

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .............................................................. 3, 4

*In re Signet Jewelers Ltd. Sec. Litig.*,
No. 16 CIV. 6728 (CM), 2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) ................................................................................ 18

*Smugmug, Inc. v. Virtual Photo Store LLC*,
No. C 09-2255 CW, 2009 WL 2488003 (N.D. Cal. Aug. 13, 2009) ...................... 7

*Stoyas v. Toshiba Corp.*,
424 F. Supp. 3d 821 (C.D. Cal. 2020) .............................................. 9, 10, 15

*Stoyas v. Toshiba Corp.*,
896 F.3d 933 (9th Cir. 2018) ........................................................*passim*

*Sullivan v. Barclays PLC*,
No. 13-CV-2811 (PKC), 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017)................... 11

*In re Tezos Sec. Litig.*,
No. 17-CV-06779-RS, 2018 WL 4293341 (N.D. Cal. Aug. 7, 2018) ................... 11

*U.S. Mortg., Inc. v. Saxton*,
494 F.3d 833 (9th Cir. 2007) ...................................................... 15, 16

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019)...............................................................20, 22

*Veal v. Lendingclub Corp.*,
    No. 18-CV-02599-BLF, 2020 WL 3128909 (N.D. Cal. June 12, 2020) ...............24

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab.*
    *Litig.*,
    No. 2672 CRB (JSC), 2017 WL 66281 (N.D. Cal. Jan. 4, 2017) .......................6, 25

*W. Pa. Elec. Emps. Pension Fund v. Mentor Graphics Corp.*,
    No. 3:16-CV-470-PK, 2018 WL 4524107 (D. Or. May 29, 2018).......................23

*Webb v. Solarcity Corp.*,
    884 F.3d 844 (9th Cir. 2018) ...............................................................20, 21, 23, 24

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
    No. CV09CV02487DMGPLAX, 2013 WL 12203024 (C.D. Cal. Apr.
    4, 2013) .........................................................................................................12

*Zamir v. Bridgepoint Educ., Inc.*,
    No.: 15-CV-408 JLS (DHB), 2018 WL 1258108 (S.D. Cal. Mar. 12,
    2018) ...........................................................................................................23, 24

## **STATUTES**

15 U.S.C. § 78u-4(b)(3)(B).......................................................................................8

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT
Case No. 2:19-cv-04739-TJH-JC

Defendants[1] respectfully submit this Memorandum of Points and Authorities in further support of their Motion to Dismiss Plaintiffs' Complaint and in reply to Plaintiffs' Opposition to the Motion to Dismiss (the "Response") (ECF No. 58).

## I.   PRELIMINARY STATEMENT

In seeking to avoid dismissal, Plaintiffs' Response hinges on improper conclusory allegations.  Plaintiffs do not contest – because they cannot – that the Defendants did not issue, sponsor, authorize, sanction, or have any involvement with the securities at issue in the Complaint.  This alone is fatal to the Complaint because it means the Court cannot assert personal jurisdiction over Metro Bank or the Individual Defendants, and that Plaintiffs have not pled the elements of a securities fraud claim.

Indeed, Plaintiffs do not address, let alone *dispute*, the Defendants' sworn declarations that neither Metro Bank nor any of the Individual Defendants had any involvement with the MBNKF Securities that Plaintiffs allegedly purchased.  Nor do Plaintiffs address or dispute that Metro Bank does not offer, list, trade, or sponsor its LSE-listed MTRO Securities, including any ADRs, in the U.S., and is not regulated by and does not make filings with the SEC or any other regulatory body in the U.S.  Accordingly, there is no basis to exercise specific jurisdiction over any of the Defendants, or to permit jurisdictional discovery.

Second, to overcome the Complaint's failure to plead a "domestic transaction" under *Morrison*, Plaintiffs submit an immaterial declaration stating that they live in New Jersey, placed the purchase order from and received the trade confirmation there, and paid for the securities in U.S. dollars.  Not only is this declaration an improper attempt to amend the Complaint, but these allegations are wholly insufficient to plead a domestic transaction, particularly given the undisputed fact that the Defendants had nothing to do with the MBNKF Securities that Plaintiffs claim they purchased.

---

[1] Capitalized terms not otherwise defined herein have the meaning set forth in the Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss (ECF No. 52-1) (hereinafter, "MTD").

Moreover, Defendants' complete lack of involvement with the MBNKF Securities defeats any possible claim that the alleged misstatements were made "in connection with" Plaintiffs' purchase.  Plaintiffs also fail to address the absence of any particularized allegations in the Complaint that the Defendants were aware, or were deliberately reckless in not knowing, that their statements were materially false or misleading *at the time they were made*.  Plaintiffs' Response does not change the fact that the Complaint's allegations regarding scienter and falsity are taken from press releases or news articles published *after* the alleged misstatements were made, and any allegations that might establish *contemporaneous* knowledge are far too vague to meet the PSLRA's heightened pleading requirements.

Finally, the Complaint fails to engage with the numerous cases that have been dismissed based on facts virtually identical to those here on *forum non conveniens* grounds.  Recent case law further supports dismissal on these grounds because the Bank had no involvement with the MBNKF Securities, the Bank is incorporated in the U.K. and operates exclusively there, the alleged misconduct all occurred in the U.K., and the relevant evidence and witnesses are located there.

The Court should reject Plaintiffs' attempt to forum shop in the Ninth Circuit, and then assert a U.S. securities claim against a foreign bank, which does not offer, list, trade, or sponsor its shares on any U.S. exchange and – like all of the other named Defendants – had no involvement with the securities at issue here.  Accordingly, for these reasons and those discussed in Defendants' opening memorandum, the Complaint should be dismissed with prejudice.

II.    **ARGUMENT**

    A.    **Specific Jurisdiction Does Not Exist Over Any Of The Defendants**

        1.    **Plaintiffs Fail To Address Or Dispute Fatal Facts Contained In Defendants' Declarations**

The Court should dismiss this case for lack of personal jurisdiction; it need not address any other issues raised in the Motion to Dismiss.

The Response concedes that there is no basis for exercising general jurisdiction, Resp. at 10 n.5, and fails to satisfy the requirements for exercising specific jurisdiction. Under the test for specific jurisdiction, there is no dispute that Plaintiffs bear the burden of demonstrating both (1) that *Defendants* purposefully directed their actions at the U.S. or purposefully availed themselves of the privilege of conducting business here, and (2) that this action arises out of *Defendants'* forum-related activities. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004);[2] *see* MTD at 7–10; Resp. at 10. "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established." *Schwarzenegger*, 374 F.3d at 802.

Plaintiffs do not address or dispute that the Bank and the Individual Defendants did not "issue, sponsor, authorize, sanction, or have any involvement in the listing or trading of the MBNKF Securities," *see* James Decl. ¶ 10; Hill Decl. ¶ 3; Donaldson Decl. ¶ 3; Brierley Decl. ¶ 3; Arden Decl. ¶ 3, Gillan Decl. ¶ 3, and that Metro Bank does not offer, list, trade, or sponsor its LSE-listed MTRO Securities or any ADRs in the U.S.; does not register its MTRO Securities with the SEC or make any filings with the SEC or any other regulatory body in the U.S.; and purposefully chose to list its securities *only* on the LSE and had no expectation of exposing itself to U.S. securities regulation and litigation, *see* James Decl. ¶ 9; MTD at 2–5, 7–10. Where a defendant "adduce[s] evidence controverting the allegations" contained in a complaint, "the plaintiff must come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 982 (C.D. Cal. 2013). Plaintiffs have not done so, and the Court should accordingly dismiss the Complaint based on Defendants' unaddressed and undisputed declarations alone. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (plaintiff bears the burden of establishing that jurisdiction is proper, and a court cannot "assume the truth of allegations in a pleading which are contradicted by affidavit"); *Klian v. Crawford*,

---

[2] Unless otherwise indicated, internal citations, quotation marks, modifications, and subsequent history have been omitted from all citations.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT
Case No. 2:19-cv-04739-TJH-JC

No. CV1202373MMMJEMX, 2012 WL 12878721, at *4–*5 (C.D. Cal. June 6, 2012) (no specific jurisdiction based in part on uncontroverted allegations in declaration); *Park-Kim v. Daikin Indus., Ltd*, No. 215CV09523CASKKX, 2016 WL 5958251, at *4–*7 (C.D. Cal. Aug. 3, 2016) (same); *see* MTD at 6.

In addition, Plaintiffs do not allege anything else that would support exercising specific jurisdiction over foreign defendants who had *no involvement* with the securities allegedly purchased.  Plaintiffs argue that because "the Exchange Act clearly applies to the domestic transactions here, this Court's jurisdiction follows."  Resp. at 9.  That is factually wrong – Plaintiffs have not alleged a domestic transaction, *see infra* at 8–13 – and regardless, it is wrong as a matter of law and in direct conflict with long-established Due Process requirements.  *See* MTD at 5–10.  Plaintiffs bear the burden of demonstrating that their cause of action arises out of conduct *by the Defendants* targeting the U.S.  *Schwarzenegger*, 374 F.3d at 802.  Here, there is not – and cannot be – any such allegation in the Complaint.

Plaintiffs argue that "this test is satisfied because Plaintiffs allege that Defendants intentionally made materially false and misleading statements about Metro Bank that they knew or should have known would be relied upon by U.S. investors purchasing Metro Bank stock on the U.S. OTC market."  Resp. at 10–11.  However, this argument fails for several reasons.  First, the allegations in the Complaint do not relate to "Metro Bank stock."  Instead, they relate to the MBNKF Securities with which Defendants had no involvement.  *See* Compl. at 2 n.1.

Second, assuming Plaintiffs intended "Metro Bank stock" to mean "MBNKF Securities," there is no allegation that any of Defendants' alleged misstatements were made with respect to the MBNKF Securities, were contained in SEC filings, or were otherwise made with knowledge that they would be relied upon by U.S. investors.  Indeed, Plaintiffs *cannot* make such allegations because they *do not refute* that Metro Bank's MTRO Securities are listed only on the LSE; that Metro Bank does not offer, list, trade, or sponsor its MTRO Securities or any ADRs in the U.S.; that it is not

4

regulated by or required to make any filings with the SEC; and that none of the Defendants had any involvement with the MBNKF Securities. Accordingly, Plaintiffs fail to carry their burden of establishing specific jurisdiction. *See Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 801–02 (S.D.N.Y. 2018) (no jurisdiction over defendant who lived in the U.K. and worked for company headquartered in the U.K. where there was no allegation about defendant's alleged role in preparing false financial statements or that defendant signed any SEC filing); *cf. Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 371 (3d Cir. 2002) ("In our view, by sponsoring an ADR facility, Roche purposefully availed itself of the privilege of conducting activities in the American securities market, and thereby established the requisite minimum contacts with the United States."); *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 644 (S.D.N.Y. 2017) (concluding that defendant "participated in a fraud directed to deceiving United States shareholders" where defendant signed press release filed with the SEC); *Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Commc'ns Ltd.*, No. 17-CV-4937 (JPO), 2019 WL 1407453, at *6 (S.D.N.Y. Mar. 28, 2019) (allegations that defendants signed or approved allegedly misleading SEC filings sufficient for jurisdiction).

Indeed, the very cases cited by Plaintiffs in the Response demonstrate why personal jurisdiction is lacking here. *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 352 (D. Md. 2004) (defendants signed numerous SEC filings, and "[b]y signing SEC filings, . . . individuals direct[] their actions at the United States and [can] reasonably anticipate being haled into court here"); *In re LDK Solar Sec. Litig.*, No. C0705182WHA, 2008 WL 4369987, at *6 (N.D. Cal. Sept. 24, 2008) (jurisdiction established where defendants "purposefully directed a fraud at investors on the New York Stock Exchange (and U.S. regulators)" by signing prospectus and filing it with SEC); *S.E.C. v. Straub*, 921 F. Supp. 2d 244, 255 (S.D.N.Y. 2013) (defendants' securities were publicly traded through ADRs listed on the NYSE and were registered with the SEC, and thus "Defendants knew or had reason to know that any false or misleading financial reports would be given to prospective American purchasers"); *In*

5

*re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 66281, at *21 (N.D. Cal. Jan. 4, 2017) (statements were "expressly directed at United States investors as part of Volkswagen's compliance with SEC Rule 12g3–2(b); and the statements caused harm [defendant] knew was likely to be suffered in the United States"); *id.* at *6, *22 (purposeful availment also shown where defendant "was not required" to offer ADRs, but "took affirmative steps to make its securities available to investors here").

What is more, several of the cases cited by Plaintiffs declined to exercise jurisdiction over foreign defendants on facts very similar to those here, and thus *support dismissal*. For example, in *Royal Ahold* the court found that specific jurisdiction did not exist over a foreign individual who did not sign any SEC filings and where "the U.S. [could not] be fairly characterized as the focal point of either [the defendant's] acts or the harm suffered because his allegedly fraudulent acts were directed towards the Netherlands, and globally, but not specifically towards the U.S." *Royal Ahold*, 351 F. Supp. 2d at 354. In *Sharef*, the court similarly declined to exercise jurisdiction over a foreign individual defendant where his actions were "far too attenuated from the resulting harm to establish minimum contacts," and where the SEC did not allege that he "directed, ordered or even had awareness of the cover ups that occurred . . . much less that he had any involvement in the falsification of SEC filings in furtherance of those cover ups." *S.E.C. v. Sharef*, 924 F. Supp. 2d 539, 546 (S.D.N.Y. 2013). The Complaint here similarly fails to make allegations of any course of conduct *by the Defendants* directed at the U.S. sufficient to establish personal jurisdiction.

If this Court adopts Plaintiffs' radical theory of personal jurisdiction, it would be the only court in the United States to do so, and it would subvert the personal liberty interests that lie at the core of personal jurisdiction. "Personal jurisdiction . . . restricts judicial power not as a matter of sovereignty, but as a matter of individual liberty, for due process protects the individual's right to be subject only to lawful power." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011). Thus, "[t]he question is

whether *a defendant* has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign." *Id.* (emphasis added). Plaintiffs' theory of personal jurisdiction is boundless, and would permit any foreign issuer anywhere in the world, regardless of how attenuated or non-existent their contacts with the U.S. might be, to be haled into the U.S. to defend securities suits in contravention of all "notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see* MTD at 5–10.

### 2.   Jurisdictional Discovery Is Not Warranted

Plaintiffs' request for jurisdictional discovery should be denied. *See* Resp. at 13 n.7.  "Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006).  Because Plaintiffs have already amended their complaint once and have made no attempt in their Response to address or dispute any of the facts contained in Defendants' jurisdictional declarations, discovery is not appropriate. *Barantsevich*, 954 F. Supp. 2d at 997–98 (denying jurisdictional discovery where defendant "proffered uncontroverted evidence that its subsidiaries are not agents or alter egos," and plaintiff "offered nothing but speculation").

Plaintiffs also offer no facts – in either the Complaint or Response – suggesting that discovery would assist them in establishing jurisdiction. *See In re Satyam Comput. Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 485 (S.D.N.Y. 2013) (denying jurisdictional discovery where plaintiffs "did not provide an outline of how their showing of minimum contacts might be enhanced by jurisdictional discovery"); *cf. Smugmug, Inc. v. Virtual Photo Store LLC*, No. C 09-2255 CW, 2009 WL 2488003, at *3–*4 (N.D. Cal. Aug. 13, 2009) (permitting jurisdictional discovery where plaintiff "demonstrated that it c[ould] supplement its jurisdictional allegations through discovery" with specific information relating to Defendant's in-forum contacts); *Blair v. CBE Grp. Inc.*, No. 13-CV-134-MMA WVG, 2013 WL 2029155, at *3 (S.D. Cal. May 13, 2013) (granting

discovery because "at least some evidence exists that CBE Group directed its activities to residents of this District").[3]

Accordingly, Plaintiffs' request is a mere fishing expedition and should be denied. *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) ("The denial of Boschetto's request for discovery, which was based on little more than a hunch that it might yield jurisdictionally relevant facts, was not an abuse of discretion."); *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (speculation regarding what jurisdictional discovery will reveal is insufficient); *see also* 15 U.S.C. § 78u-4(b)(3)(B) (granting stay of all discovery under PSLRA while motion to dismiss is pending, unless necessary to preserve evidence or to prevent undue prejudice).

## B.    Plaintiffs Fail To Allege A "Domestic Transaction"

Plaintiffs do not dispute that the Pink Open Market does not constitute a "domestic exchange," but instead seek to satisfy *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), by alleging a "domestic transaction" under the "irrevocable liability" test adopted by the Ninth Circuit in *Stoyas v. Toshiba Corp.*, 896 F.3d 933, 949 (9th Cir. 2018) ("*Toshiba I*"). *See* Resp. at 5–8. In doing so, Plaintiffs argue (without analysis) that the facts of this case are "substantially similar" to *Toshiba*, and even claim that the Motion to Dismiss "mischaracterizes" *Toshiba* which, according to Plaintiffs, "did not decide what was required to meet the [irrevocable liability] test." *See* Resp. at 6 & 8 n.4. However, the Ninth Circuit unequivocally held in *Toshiba* that to survive dismissal, plaintiffs must make "*specific factual allegations* regarding where the parties to the transaction incurred irrevocable liability," *Toshiba I* at 949 (emphasis

---

[3] The sole case cited by Plaintiffs – a state law contract action – is inapposite. *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003). In that case, there were facts in the existing record that could support jurisdiction on the basis of an "alter ego" or agency theory, but "[t]he record [was] simply not sufficiently developed to" allow for a proper determination – and thus the court permitted discovery on that limited issue. *Id.* Here, Plaintiffs have not submitted any evidence in support of their specious theory of specific jurisdiction or attempted to refute Defendants' declarations. *Harris Rutsky* is of no help to Plaintiffs.

8

added), such as "who sold the relevant securities and how those transactions were effectuated, as evidenced by documentation such as confirmation slips," *id.* (*citing In re Petrobras Sec.*, 862 F.3d 250, 263, 273 (2d Cir. 2017)).

On remand, the district court held that plaintiffs' amended complaint contained sufficiently specific allegations "leading to the plausible inference that the parties incurred irrevocable liability within the United States," where plaintiffs alleged that: (a) the placement of the buy order, the payment of the purchase price, and transfer of title to Toshiba's ADRs took place within the U.S.; (b) plaintiffs' purchase was directed by its outside investment manager, ClearBridge Advisors LLC, located in New York; (c) ClearBridge placed the buy order through a broker located in New York; (d) the broker purchased the ADRs on the OTC Market using the OTC Link trading platform, both of which are based in New York; (e) the purchase order and trade confirmation were routed through OTC Link's servers; (f) the depositary bank issued the ADRs from its New York office; (g) plaintiffs made payment from a New York-based bank; and (h) transfer of title was recorded in Citibank in New York. *Stoyas v. Toshiba Corp.*, 424 F. Supp. 3d 821, 826-27 (C.D. Cal. 2020) ("*Toshiba II*").

Plaintiffs here do not make any similar allegations. Instead, the Response seeks to introduce a declaration from Plaintiffs alleging only that they: (a) were in New Jersey when they placed the purchase order for the MBNKF Securities "via the website of [their] broker, TD Ameritrade;" (b) paid for the order in U.S. dollars drawn from their account at TD Ameritrade; and (c) "received the trade confirmation for the MBNKF purchase at [their] address in New Jersey." *See* Joint Declaration of Lead Plaintiffs in Opposition to the Motion to Dismiss (ECF No. 58-1) ¶¶ 1–6; *see also* Resp. at 7. Because this Declaration impermissibly seeks to introduce allegations not contained in Plaintiffs' Complaint, the Court should not consider it in ruling on the Motion to Dismiss. *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1020–21 (C.D. Cal. 2015). However, even if the Court does consider the Declaration, its barebone allegations about Plaintiffs' residency or U.S.-dollar payments, even taken

9

together, are insufficient to satisfy the irrevocable liability test. *S.E.C. v. Yin Nan Michael Wang*, No. LACV1307553JAKSSX, 2015 WL 12656906, at *10 (C.D. Cal. Aug. 18, 2015) ("[A] purchaser's citizenship or residency does not affect where a transaction occurs.") (*citing Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012)); *Banco Safra S.A. - Cayman Islands Branch v. Samarco Mineracao S.A.*, No. 16 CIV. 8800 (RMB), 2019 WL 2514056, at *5 (S.D.N.Y. June 18, 2019) (allegation that transactions were consummated with U.S. dollars is insufficient to plead a domestic transaction).

Because they cannot offer sufficient evidence about "contract formation, placement of purchase orders, passing of title, and the exchange of money," *Toshiba I* at 949, Plaintiffs contend these facts are "irrelevant." Resp. at 7. However, they are precisely the kinds of allegations the Ninth Circuit held are "directly related to the consummation of a securities transaction." *Toshiba I* at 949. In contrast to *Toshiba I* and *II*, there are no allegations in either the Complaint or the Response about: (a) where or by whom title to the MBNKF Securities was transferred (only that Plaintiffs received the trade confirmation at their address in New Jersey); (b) how TD Ameritrade effectuated the trade; (c) where either TD Ameritrade or Plaintiffs' account at TD Ameritrade is located; and (d) where the purchase order and trade confirmation were routed. The Plaintiffs merely allege that "the transactions took place using the facilities of the OTC market, all of which were and are located in New York, New York." Resp. at 7 (*citing* Compl. ¶ 19). However, the Court in *Toshiba II* made clear that one allegation standing alone does not satisfy the irrevocable liability test, and that the Plaintiffs' allegations must be "taken together." *Toshiba II* at 827. Accordingly, the fact that the MBNKF Securities may be listed on the Pink Open Market is not sufficient to plead a "domestic transaction." *See id.*; *see also City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 181 n.33 (2d Cir. 2014) ("[W]e have never held that the placement of a purchase order, without more, is sufficient to incur irrevocable liability."); *Sullivan v. Barclays PLC*, No. 13-CV-2811 (PKC), 2017 WL

685570, at *29 (S.D.N.Y. Feb. 21, 2017) (no domestic transaction where complaint alleged that plaintiffs were U.S. residents who "engaged in LIFFE Euribor futures transactions through LIFFE Connect terminals located in the United States," but made no allegations "concerning the location of the transactions themselves or the structure of LIFFE transactions").[4]

Moreover, the cases cited in the Response involved either written contracts, the clear terms of which evidenced that the transactions were domestic, or otherwise involved a much closer nexus to the U.S. that is entirely absent here. *See In re Tezos Sec. Litig.*, No. 17-CV-06779-RS, 2018 WL 4293341, at *8 (N.D. Cal. Aug. 7, 2018) (domestic transaction alleged where, among other things, purchase of cryptocurrency occurred on a website hosted on a server in Arizona, run by the seller in California, in response to marketing "that almost exclusively targeted United States residents," and where plaintiff's contribution to an ICO became "irrevocable only after it was validated by a network of global 'nodes' clustered more densely in the United States than in any other country"); *Yin Nan Michael Wang*, 2015 WL 12656906, at *11–*12 (terms of subscription agreements "demonstrate[d] that the sale of the securities to the investors did not close until the subscription agreements were accepted . . . in the United States" and the notes were countersigned in the U.S.) (also relying on "the fact that the transactions at issue have a substantial nexus to the United States," including because the securities were issued for the purpose of raising money to invest in mortgages and deeds of trusts for property located in the U.S.); *WPP Luxembourg Gamma Three Sarl*

---

[4] Plaintiffs' argument that FINRA Rule 5220 establishes a domestic transaction is unavailing. *See* Resp. at 7. There is no such allegation in the Complaint and this argument should therefore be disregarded. *Gerritsen*, 112 F. Supp. 3d at 1020–21; *see also Dietz Int'l Pub. Adjusters of Cal., Inc. v. Evanston Ins. Co.*, No. CV 09-06662 MMM (Ex), 2009 WL 10673937, at *3 n.27 (C.D. Cal. Dec. 14, 2009) ("A plaintiff cannot cure deficiencies in a complaint through allegations provided in its opposition to a motion to dismiss."). Moreover, FINRA Rule 5220 requires broker-dealers to fulfill securities purchases or sales at the prices they quote, which is irrelevant to establishing a domestic transaction under *Morrison*. Plaintiffs indeed cite no case holding that FINRA Rule 5220 is relevant in establishing a domestic transaction under the irrevocable liability test.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT
Case No. 2:19-cv-04739-TJH-JC

*v. Spot Runner*, Inc., No. CV09CV02487DMGPLAX, 2013 WL 12203024, at *6 (C.D. Cal. Apr. 4, 2013) (relying on language in stock purchase agreement expressly providing that it would not become final until defendant executed it, and that defendant presumably executed it in the U.S. because "it is a Delaware corporation with its principal place of business in California and both Founders are residents of California"). Here, there are simply no allegations about the existence of contracts related to the MBNKF Securities that would support a finding of a domestic transaction or any other substantial nexus to the U.S.

Finally, Plaintiffs' footnoted request for leave to amend in order to plead a domestic transaction should be denied. *See* Resp. at 13 n.7. First, the Response Declaration – through which Plaintiffs effectively try to amend their Complaint – demonstrates that amendment would be futile here, given the lack of the required allegations supporting a domestic transaction. *See Felber v. Yudof*, 851 F. Supp. 2d 1182, 1184 n.2 (N.D. Cal. 2011) (facts contained in declarations in response to motion to dismiss may be considered in determining whether to grant leave to amend). Second, despite Plaintiffs' claim that, following *Toshiba*, they can "almost certainly" plead a domestic transaction if given an opportunity to amend, Resp. at 13 n.7, that is simply untrue. The Ninth Circuit in *Toshiba* found that to be the case where, among other things, "the four Toshiba ADR depositary institutions' principal executive offices, agents for service, and offices where ADR holders can exchange their ADRs for Toshiba common shares are all in New York." *Toshiba I* at 949. Plaintiffs make no such allegations here, nor could they given that the MBNKF Securities are not ADRs – notably, Metro Bank has never participated in a U.S. ADR program – and there are, accordingly, no ADR depositary institutions in the U.S. to assist in effectuating transactions in the MBNKF Securities. *See* James Decl. ¶ 9.

Accordingly, Plaintiffs' attempt to subvert *Morrison* and *Toshiba* and satisfy the "irrevocable liability" test based on conclusory allegations that they placed a buy order in New Jersey and paid for the securities in U.S. dollars should – and must – be rejected.

12

Plaintiffs clearly seek shelter in this District in the hope that they can exploit *Toshiba* and avoid the overwhelming precedent in other Circuits that have rejected attempts to plead a "domestic transaction" where, like here, the facts are "so predominantly foreign as to be impermissibly extraterritorial." *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 216 (2d Cir. 2014); *see also* MTD at 13 n.7. However, as the discussion above indicates, Plaintiffs' allegations fail even to satisfy *Toshiba* and therefore the Complaint must be dismissed for failure to plead a "domestic transaction." *See* MTD at 11–13.

### C.      Plaintiffs Fail To State A Claim Under Section 10(b) Of The Exchange Act

#### 1.      Plaintiffs Fail To Demonstrate That Their Purchases Occurred "In Connection With" Defendants' Alleged Misstatements

As discussed above, Plaintiffs do not address or dispute that the Defendants did not issue, sponsor, authorize, sanction, or have any involvement in the listing or trading of the MBNKF Securities. *See supra* at 2–3. Indeed, Plaintiffs do not allege that they purchased MTRO Securities, or that the MTRO Securities (or even ADRs) trade in the U.S. Plaintiffs therefore can plead no connection between Defendants' statements and Plaintiffs' purchase of the MBNKF Securities, or that Defendants in any way "induced" Plaintiffs to purchase the MBNKF Securities. *See Toshiba I* at 951 (alleged fraud "must be done to induce the purchase at issue"); Brief for the United States as Amicus Curiae at 17, *Toshiba Corp. v. Auto. Indus. Pension Tr. Fund.*, No. 18-486 (U.S. May 20, 2019) ("DOJ Amicus Br.") (observing that if defendant could show that it chose to list its securities only in foreign markets to avoid U.S. securities regulation and litigation, it would be more difficult for plaintiff to prove that defendant's fraud was "in connection with" plaintiff's purchase of unsponsored ADRs).

Plaintiffs attempt to distinguish the cases cited in the Motion to Dismiss by arguing that there is no need to show that the Bank had "some active involvement" in the issuance or sale of the MBNKF Securities to satisfy the "in connection with"

element. *See* Resp. at 20 n.11. However, the portions of the cases Plaintiffs cite to support this argument address whether *Morrison* has been satisfied, not the "in connection with" requirement. *See Toshiba I*, 896 F.3d at 949; *S.E.C. v. Campania Internacional Financiera S.A.*, No. 11 Civ. 4904(DLC), 2011 WL 3251813, at *6 (S.D.N.Y. July 29, 2011). Moreover, *Campania* concerned (unlike here) whether *Morrison*'s first prong was satisfied, and the defendant in that case (again unlike here) "concede[d] . . . that it purchased CFDs 'in connection with' domestic . . . stock." *Campania*, 2011 WL 3251813, at *6 (noting that "the central issue" was "insider trading in the domestic securities of Arch stock listed on the NYSE"). Several courts have declined to extend the holding of *Campania* to cases where, like here, it would impermissibly extend *Morrison* to the "in connection with" requirement. *See S.E.C. v. Revelation Capital Mgmt., Ltd.*, 246 F. Supp. 3d 947, 956 (S.D.N.Y. 2017) ("Defendants' short selling was a securities event wholly separate and distinct from Defendants' purchase in the Offering. The SEC's interpretation of 'in connection with' is an overly expansive interpretation of *Morrison*'s first prong."); *see also In re Optimal U.S. Litig.*, 865 F. Supp. 2d 451, 455 (S.D.N.Y. 2012).

Thus, Plaintiffs' attempt to conflate the two distinct questions of whether a "domestic transaction" has been pled under *Morrison*'s second prong and whether Defendants' alleged fraud was "in connection with" Plaintiffs' purchases must be rejected. Indeed, in *Toshiba* the Ninth Circuit rejected an attempt to "turn[] *Morrison* and Section 10(b) on their heads," explaining that "because we are to examine the location of the transaction [under *Morrison*], it does not matter that a foreign entity was not engaged in the transaction. For the Exchange Act to *apply*, there must be a domestic transaction; that Toshiba may ultimately be found not liable for causing the loss in value to the ADRs does not mean that the Act is inapplicable to the transactions." *Toshiba I* at 949 (emphasis in original); *see* DOJ Amicus Br. at 13 (agreeing with Ninth Circuit's analysis and noting distinction between whether Section 10(b) applies, which is analyzed under *Morrison*, and whether it has been violated, where "in connection with"

14

element must be adequately pled).  On remand, after concluding that plaintiffs pled a "domestic transaction," the district court separately analyzed the "in connection with" element of plaintiffs' Exchange Act claim and held it was adequately pled because plaintiffs "sufficiently alleged Toshiba's *plausible participation* in the establishment of the ADR program," and that "Defendant's fraudulent conduct concealed the true condition of the company and risks associated with its stock."  *Toshiba II* at 828 (emphasis added).

Contrary to Plaintiffs' position, then, it *is* relevant whether they can allege Defendants' involvement with the MBNKF Securities.  *See* Resp. at 20 n.11.  Because they cannot, Plaintiffs cannot adequately plead the "in connection with" element of their Section 10(b) claims.  *Cf. Toshiba II* at 828 ("in connection with" element adequately pled where complaint contained allegations about the nature of the ADRs, the OTC Market, the ADR program, including the depositary institutions that offered the ADRs, the Form F-6s, the trading volume, the contractual terms, and defendant's plausible consent to the sale of its stock in the U.S. as ADRs).

Finally, the cases cited by Plaintiffs in the Response involved a direct connection between defendant's securities, the alleged fraud, and plaintiff's investments – not, as here, two different categories of securities and *no* connection between Defendants' alleged fraud and the securities Plaintiffs purchased.  For example, in *United States Mortgage, Inc. v. Saxton*, 494 F.3d 833, 844–45 (9th Cir. 2007), plaintiffs invested in certain loans that the defendant, Saxton, used to finance real estate development projects.  Plaintiffs alleged that Saxton's fraudulent scheme inflated its stock price, and induced plaintiffs to refrain from exercising certain rights under the loan documents.  The court held that these allegations were sufficient to plead the "in connection with" element because "the alleged harm stems from misrepresentations in Saxton's public filings and public statements.  These misrepresentations undoubtedly 'coincide' with the purchase or sale of Saxton's publicly traded shares."  In other words, it was irrelevant that plaintiffs did not themselves purchase or sell any of Saxton's publicly

traded shares, because they "alleged fraud that 'coincide[d]' with the purchase or sale of [those] securities." *Id.*

*Securities & Exchange Commission v. Sabrdaran*, No. 14-CV-04825-JSC, 2015 WL 901352, at *10 (N.D. Cal. Mar. 2, 2015), involved the purchase of call options by IG Index as a hedge to spread bets that were placed on InterMune common stock based on confidential insider information.  In that case, there was a direct connection between the purchase of the call options, and the spread bets on InterMune stock.  Specifically, the court found that the complaint sufficiently alleged that it was "because of" the spread bet that IG Index "purchased the InterMune call options."  In other words, "the alleged fraudulent activity—making the spread bet based on confidential insider information—[was] 'connected with' the purchase of InterMune securities."  The court concluded that "when hedging is tied to spread bets, the spread bets cause harm in connection with domestic securities.  This is precisely the type of conduct that the Exchange Act is meant to deter." *Id.*

Here, in contrast, there is *no* alleged connection between the Defendants' conduct and the MBNKF Securities that Plaintiffs purchased.  Indeed, Plaintiffs cannot make any such allegations for the reasons discussed above. *See supra* at 2–3.  Thus, Plaintiffs' argument that "the Exchange Act has been regularly applied against issuers based on transactions in options and other derivative securities that they were not involved in creating," Resp. at 20 n.11, misses the mark.

In short, because Plaintiffs have not alleged any connection between Defendants' alleged conduct, the MBNKF Securities, and their purchase of those Securities, Plaintiffs fail to state a claim under Section 10(b). *See Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1026 (9th Cir. 1999) ("[T]he fraud in question must relate to the nature of the securities, the risks associated with their purchase or sale, or some other factor with similar connection to the securities themselves.").

**2.  <u>Plaintiffs Fail To Allege A Material Misstatement Or Omission</u>**

As the Response amply demonstrates, this case represents nothing more than an attempt by Plaintiffs to plead fraud by hindsight. Plaintiffs rely entirely on the disclosure in January 2019 – after every supposedly false or misleading statement at issue was made – to prove falsity, but do not point to a single *particularized* factual allegation suggesting that those statements were false at the time they were issued. It is well-established that statements regarding capital ratios and compliance with banking regulations are not actionable where, like here, there are no allegations demonstrating that they were false when made. *See Reese v. Malone*, 747 F.3d 557, 578 (9th Cir. 2014) ("Statements of legal compliance are pled with adequate falsity when documents detail specific violations of law that existed at the time the warranties were made."), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017); *City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 691 F. App'x 393, 395 (9th Cir. 2017) (statements assuring investors of bank's "safe and sound" banking practices were not actionable because statement did not establish that bank engaged in unsafe and unsound practices at the time the statements were made); *City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1129–31 (E.D. Wash. 2013) (falsity of defendants' public statements that financial institution was well-capitalized not sufficiently pled where plaintiff did not show that defendants were in contemporaneous possession of information showing otherwise); *In re Downey Sec. Litig.*, No. CV 08-3261-JFW(RZX), 2009 WL 2767670, at *5 (C.D. Cal. Aug. 21, 2009) ("Rosenthal's statements regarding Downey's 'strong' capital position . . . are 'far too vague to be actionable under the PSLRA.'").

The cases Plaintiffs cite in their Response are also unavailing and in fact underscore the Complaint's numerous fatal defects. In many of those cases, the court held that falsity was sufficiently pled where the plaintiffs made specific allegations about defendants' contemporaneous knowledge of information demonstrating that their statements were false or misleading – allegations that are entirely absent from the

17

Complaint here.  *See, e.g.*, *Hammer v. Frontier Fin. Corp.*, No. C10-0643, 2011 WL 13229260, at \*5 (W.D. Wash. Sept. 7, 2011) (statements were found to be actionable in large part where "numerous accounts of deficiencies . . . were found by the FDIC and reported to Frontier between 2005 and 2010," and where allegedly false statements were made between 2008 and 2009); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16 CIV. 6728 (CM), 2018 WL 6167889, at \*14 (S.D.N.Y. Nov. 26, 2018) (allegations in complaint were "supported by robust factual matter, reports of confidential former employees, and other corroborative information and third-party accounts that g[a]ve rise to an inference of falsity"); *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 380–81 (S.D.N.Y. 2015) ("[P]laintiffs allege that at the time the Company's management was professing its opinion that the company's internal controls were effective, that same management was well aware of the extensive corruption in the Company's procurement activities.").

Accordingly, because Plaintiffs fail to plead a material misrepresentation or omission, the Complaint should be dismissed.  *See* MTD at 15–18; *City of Roseville*, 963 F. Supp. 2d at 1109 ("Without evidence of contemporaneous falsity, an allegation of a misleading representation, which entirely rests on later contradictory statements, constitutes an impermissible attempt to plead fraud by hindsight.").

### 3.   <u>Plaintiffs Fail To Raise A Strong Inference Of Scienter</u>

As a preliminary matter, Plaintiffs misstate the required state of mind that they must establish.  Plaintiffs claim that the "requisite level of scienter is recklessness." Resp. at 21.  However, in addition to intent to deceive, manipulate, or defraud, *see* MTD at 18, it is only *deliberate* recklessness that will raise a "strong inference" of scienter, which the Ninth Circuit has defined as conduct reflecting "some degree of intentional or conscious misconduct."  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014); *see* MTD at 18.  In other words, deliberate recklessness is an:

> *[E]xtreme* departure from the standards of ordinary care, which presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious* that the actor must have been aware of it.  Stated differently, deliberate recklessness requires that an actor had reasonable grounds to believe material

18

facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although the actor could have done so without extraordinary effort.  Facts showing mere recklessness or a motive to commit fraud and opportunity to do so provide some reasonable inference of intent, but are not sufficient to establish a strong inference of *deliberate recklessness*.

*Inchen Huang v. Higgins*, No. 17-CV-04830-JST, 2019 WL 1245136, at *4 (N.D. Cal. Mar. 18, 2019) (emphasis in original).  Here, Plaintiffs fail to meet this standard.

### a. Plaintiffs Cannot Rely On The Core Operations Doctrine

Plaintiffs plead no facts that would permit an inference of scienter under the core operations doctrine.  *See* Resp. at 23. "Under the core operations theory, allegations regarding management's role in a corporate structure and the importance of the corporate information about which management made false or misleading statements may also create a strong inference of scienter *when made in conjunction with detailed and specific allegations about management's exposure to factual information within the company*." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 620 (9th Cir. 2017) (emphasis added).

"Proof under this theory is not easy.  A plaintiff must produce either specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations, such as data monitoring, or witness accounts demonstrating that executives had actual involvement in creating false reports." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014).

Here, Plaintiffs fail to make any such allegations.  While the Complaint alleges that Defendants Brierley and Arden were responsible for "reporting on" risk-weighted assets ("RWAs") and related metrics, Compl. ¶ 26, there is no allegation that they or any of the other Individual Defendants were directly responsible for calculating (or even overseeing the calculation of) RWAs.  Plaintiffs' other conclusory allegations that the Individual Defendants received regular reports that "addressed" the Bank's capital requirements and RWAs, were "keenly aware" of applicable capital regulations, and "regularly discussed RWAs," Compl. ¶ 29, are not nearly sufficient to raise an inference

of scienter under the core operations doctrine.  *See Webb v. Solarcity Corp.*, 884 F.3d 844, 857 (9th Cir. 2018) ("Webb has alleged that Defendants[] had a hands-on style and general accounting acumen, but not that they were involved in accounting decisions as minute as the calculation of the burden ratio and inclusion of prior period direct costs in the ratio's denominator.  Webb has not alleged that Defendants[] had actual access to the accounting formula, but only generalized access to reports that may have documented its application."); *Oklahoma Firefighters Pension & Ret. Sys. v. Ixia*, No. CV 13-08440 MMM (SHx), 2015 WL 1775221, at *30–*31 (C.D. Cal. Apr. 14, 2015) (courts applying the core operations doctrine "have generally required that the operation in question constitute nearly all of a company's business before finding scienter," and "[n]umerous courts have found that accounting . . . determinations are not part of a company's core operations").

This is also not one of the rare cases where it would be "absurd" to suggest that management was without knowledge of the matter.  The adjustment that Metro Bank announced in January 2019 was made to the risk weighting of certain commercial loans, *see* Compl. ¶ 75, and is alleged to have required a 10% adjustment to Metro Bank's RWAs, *see* Resp. at 15.  Plaintiffs offer nothing more than the circular argument that "the alleged misstatements were part of the Company's core operations" in support of their position.  Resp. at 23.  This unsupported contention is wholly insufficient under the core operations doctrine.  *See Webb*, 884 F.3d at 857 (accounting error's impact on company's financials was not so dramatic that it would be absurd to think that defendants did not know about it); *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 817 (N.D. Cal. 2019) ("'Origination fees' may be one of LendingClub's main revenue sources, but that fact does not make every piece of information within the Company that relates to those fees critical to the business's core operations."); *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2018 WL 1411129, at *29 (N.D. Cal. Mar. 21, 2018) (allegation that acquisition was "transformational" and that outstanding stock would be acquired for $180 million in cash, which was "nearly half

20

of [the target's] market capitalization at the time," was insufficient); *Lopes v. Fitbit, Inc.*, No. 18-CV-06665-JST, 2020 WL 1465932, at *11 (N.D. Cal. Mar. 23, 2020) (rejecting allegation about the "central importance of new products to Fitbit's financial success" where complaint did not contain any particularized allegations about "the who, what, where, when, and how regarding each Defendant's access to the relevant information that belies fraudulent intent"); *cf. In re Acadia Pharms. Inc. Sec. Litig.*, No. 18-CV-01647-AJB-BGS, 2020 WL 2838686, at *8 (S.D. Cal. June 1, 2020) (inference of scienter raised where it was undisputed that particular drug was company's only product, and that "Defendants focused all their attention on successfully commercializing" it).

In the absence of any specific allegations that the Individual Defendants played a direct role in preparing the reports that contained the allegedly misstated RWAs, or that the loans used to calculate the RWAs were so important to Metro Bank that they *must* have been aware of the Misclassification Issue, Plaintiffs cannot rely on the core operations doctrine to plead scienter.

        **b.**       **The Alleged "Magnitude" Of The Misclassification Issue Does Not Support A Strong Inference Of Scienter**

Lacking *any* direct evidence to meet their burden of demonstrating a deliberately reckless state of mind, Plaintiffs rely on the purported "magnitude" of the Misclassification Issue. *See* Resp. at 22. However, the Misclassification Issue allegedly required a 10% adjustment to RWAs, *see* Resp. at 15; Compl. ¶¶ 75, 78, which is insufficient to raise the requisite inference of scienter, *see Webb*, 884 F.3d at 858 ("Admittedly, the magnitude of the requisite restatement—15% to 67% per quarter—and the seven-quarter duration of the alleged fraud are troubling and potentially indicative of scienter. But even those facts, cobbled together with all of the others aforementioned, are not enough to satisfy the standard required by the PSLRA."); *In re Hertz Global Holdings Inc*, 905 F.3d 106, 116 (3d Cir. 2018) (evidence that Hertz overstated its net income and pre-tax income by between 9.97% and 32.12% "was not

21

sufficiently drastic to give rise to a strong inference of scienter absent particularized allegations of fraudulent intent"); *Hessefort v. Super Micro Computer, Inc.*, No. 18-CV-00838-JST, 2020 WL 1551140, at *7 (N.D. Cal. Mar. 23, 2020) (overstatements of between 1.1% and 6.8% were not sufficient standing alone to support requisite inference of scienter); *see also City of Dearborn Heights*, 856 F.3d at 622.

Indeed, the very cases cited in the Response demonstrate why the 10% adjustment to the Bank's RWAs is insufficient here. *See Marksman Partners, L.P. v. Chantal Pharms. Corp.*, 927 F. Supp. 1297, 1306, 1314–15 (C.D. Cal. 1996) (revenue overstatements of $3 million and $10 million, where company's revenues in its "first profitable quarter" were only $2.8 million, contributed to inference of scienter); *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1106 (10th Cir. 2003) (accelerated recognition of income resulted in more than 25% increase in company's reported net income and contributed to inference of scienter). Thus, a 10% adjustment to the Bank's RWAs, standing alone, does not support a strong inference of scienter.

### c.    The Other Scienter Allegations Are Insufficient

Plaintiffs continue to assert that "Defendants were warned about the [Misclassification Issue] by analysts and the government approximately 18 months prior to the first disclosure." Resp. at 21, 24. However, the supposed "warning" from *analysts* constituted a *single opinion* from a bank outsider, and the Response – just like the Complaint – fails to state the "who, when, and what" about these supposed "warnings" with sufficient particularity to establish scienter here. *See* MTD at 19–21; *LendingClub*, 423 F. Supp. 3d at 816 (plaintiffs' reliance on allegations in FTC complaint about "compliance review" report and statements from one of the company's largest investors that supposedly warned defendants about compliance issues was insufficient where complaint failed to allege when the warnings were issued, "what exactly" they recommended, and whether/when any of the Individual Defendants had access to or reviewed them). Instead, Plaintiffs' allegations are taken exclusively from various newspaper articles published in the immediate aftermath of the disclosure of the

Misclassification Issue.  *See* Resp. at 24.  Yet the sole case cited by Plaintiffs held that, "[t]o the extent that a newspaper article corroborates plaintiff's own investigation and provides detailed factual allegations, it can—at least in combination with plaintiff's investigative efforts—be a reasonable source of information and belief allegations."  *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1272 (N.D. Cal. 2000).  Not only do the articles cited by Plaintiffs fail to provide any "detailed factual allegations," but Plaintiffs have not conducted their own investigation, and these articles are therefore insufficient to raise the requisite inference of scienter.  *See id.* ("Conclusory allegations of wrongdoing are no more sufficient if they come from a newspaper article than from plaintiff's counsel.").[5]

### d.    Even A Holistic Review Of The Allegations Does Not Raise The Requisite Inference Of Scienter

---

[5] Other allegations regarding ongoing government investigations announced *after* the disclosure of the Misclassification Issue and certain resignations at Metro Bank, *see* Resp. at 23, are also insufficient, *see* MTD at 21; *Zamir v. Bridgepoint Education, Inc.*, No.: 15-CV-408 JLS (DHB), 2018 WL 1258108, at *17 (S.D. Cal. Mar. 12, 2018) ("[T]he existence of an SEC investigation, standing alone, does not support Plaintiffs' scienter argument."); *In re International Rectifier Corp. Securities Litigation*, No. CV 07–02544–JFW (VBKx), 2008 WL 4555794, at *16 (C.D. Cal. May 23, 2008) (resignation and termination not sufficient where they "were not accompanied by any public statement . . . that [individuals] participated or were involved in the fraud"); *see also Webb*, 884 F.3d at 857.

Moreover, any supposed inconsistencies in statements about who discovered the Misclassification Issue, made after the alleged misstatements, do not support a strong inference of scienter.  *See* Resp. at 24.  In fact, they *negate* scienter here since, if the Misclassification Issue was indeed discovered with the help of the PRA, this leads to the inference that none of the Defendants knew about the Issue at the time of the alleged misstatements.  "This confusion undermines any inference of scienter."  *Alaska Elec. Pension Fund v. Adecco S.A.*, 371 F. Supp. 2d 1203, 1220 (S.D. Cal. 2005); *see W. Pa. Elec. Emps. Pension Fund v. Mentor Graphics Corp.*, No. 3:16-CV-470-PK, 2018 WL 4524107, at *21 (D. Or. May 29, 2018) ("[L]ater-made statements can tend to establish that earlier statements were intentionally misleading when made where the later statements are 'necessarily inconsistent' with the earlier statements, and not otherwise."); *In re FVC.COM Sec. Litig.*, 32 F. App'x 338, 342 (9th Cir. 2002) (plaintiffs' "argument that they should be able to plead a 'false exculpatory statement' by the defendants fails for lack of facts showing falsity in the first place"); *Ezra Charitable Tr. v. Tyco Int'l, Ltd.*, 466 F.3d 1, 9 (1st Cir. 2006) (allegation about defendant's supposedly false explanation for why restatement was required was insufficient to plead scienter); *see also Veal v. Lendingclub Corp.*, No. 18-CV-02599-BLF, 2020 WL 3128909, at *14 (N.D. Cal. June 12, 2020).

Even when considered holistically, Plaintiffs' scienter allegations fall short. *See City of Dearborn Heights*, 856 F.3d at 620; *Webb*, 884 F.3d at 855. Instead, the "plausible, nonculpable explanations" for Defendants' conduct – *i.e.*, that Metro Bank misapplied applicable regulatory instructions for calculating its RWAs, disclosed its error once discovered, and then changed its calculation methods – outweigh any inferences favoring Plaintiffs. *City of Dearborn Heights*, 856 F.3d at 620–23; *Webb*, 884 F.3d at 855–58; *Zamir*, 2018 WL 1258108, at *18–*19. At worst, Plaintiffs have alleged that Metro Bank committed a "fundamental accounting error," Compl. ¶ 6; however, "[s]ection 10(b) and Rule 10b–5 prohibit fraud, not accounting malpractice." *In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 246 (8th Cir. 2008); *see Webb*, 884 F.3d at 856 (allegations of corporate mismanagement are insufficient).[6]

### D.   The Complaint Should Be Dismissed For *Forum Non Conveniens*

The Response spends one conclusory paragraph attempting to rebut Defendants' *forum non conveniens* arguments, but fails to engage with the numerous cases discussed in the Motion to Dismiss that have dismissed factually indistinguishable complaints on such grounds. *See* Resp. at 25. Recent authority further supports dismissal for *forum non conveniens*. For example, in *Church v. Glencore PLC*, No. CV1811477SDWCLW, 2020 WL 4382280, at *3–*7 (D.N.J. July 31, 2020), the district court dismissed a securities fraud suit on such grounds where: (1) plaintiff allegedly purchased unsponsored Glencore ADRs on the OTC market; (2) Glencore is incorporated and headquartered outside the U.S.; (3) the alleged conduct giving rise to plaintiff's claim occurred abroad; and (4) the relevant evidence and witnesses were located abroad. In particular, because Glencore did not sponsor the ADRs that plaintiff purchased, the court distinguished this case from *In re Volkswagen*, 2017 WL 66281, and held that plaintiff's choice of forum should be afforded less deference. *See id.* at *4 n.7.

---

[6] What is more, Plaintiffs do not make any allegations about stock sales by the Individual Defendants, and the Ninth Circuit has "recognized that a lack of stock sales can *detract from* a scienter finding." *Webb*, 884 F.3d at 856 (emphasis added).

The same considerations warrant dismissal here – Metro Bank did not sponsor, issue, or have any involvement with the MBNKF Securities; it is incorporated and operates exclusively outside the U.S.; all of the alleged conduct giving rise to Plaintiffs' claims occurred in the U.K.; and the relevant evidence and witnesses are located abroad. Accordingly, the Court can dismiss the Complaint on *forum non conveniens* grounds, even if it does not reach the other issues raised in the Motion to Dismiss. *See* MTD at 24–25; *Church*, 2020 WL 4382280 at *7 n.12 (dismissing for *forum non conveniens* and declining to reach question of personal jurisdiction).

## III.   **CONCLUSION**

For the reasons set forth above and in the Motion to Dismiss, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Dated: September 3, 2020

Respectfully submitted,

ADAM S. LURIE
BRENDA D. DILUIGI
PATRICK C. ASHBY
**LINKLATERS LLP**

AND

ELIZABETH A. SPERLING
**ALSTON & BIRD LLP**

 /s/ *Adam S. Lurie*
_____
Adam S. Lurie
Attorneys for Defendants Metro Bank PLC, Vernon W. Hill, II, Craig Donaldson, Mike Brierley, David Arden, and Aileen Gillan

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2020, I caused a copy of **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT** to be served upon counsel of record via the Court's NextGen CM/ECF system.


/s/   *Elizabeth A. Sperling*
Elizabeth A. Sperling

Attorneys for Defendants
Metro Bank PLC, Vernon W. Hill, II, Craig Donaldson,
Mike Brierley, David Arden, and Aileen Gillan